**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Theresa Ann Velazquez, | No. CV-20-01015-PHX-SPL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Theresa Ann Velazquez's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 16, "Pl. Br.") Defendant SSA Commissioner's Response Brief (Doc. 19, "Def. Br."), and Plaintiff's Reply Brief (Doc. 23, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, "R.") and now affirms the Administrative Law Judge's decision (R. at 13–27) as upheld by the Appeals Council (R. at 1–3).

**I.   BACKGROUND**

Plaintiff filed an Application for Disability Insurance benefits on July 13, 2016, for a period of disability beginning on July 1, 2016. (R. at 13.) Her claim was denied initially on September 29, 2016, and upon reconsideration on February 6, 2017. (R. at 13.) Plaintiff appeared before the ALJ for a hearing regarding her claim on January 17, 2019, which the

1  ALJ denied on April 2, 2019. (R. at 13, 27.) On March 26, 2020, the Appeals Council
2  denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final
3  decision. (R. at 1–3.)

4  The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: cervical and lumbar spondylosis and bilateral shoulder mild degenerative joint disease. (R. at 15.)

9  Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 27.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 21.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can lift and carry 20 pounds occasionally, 10 pounds frequently; stand and walk for 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day; occasionally climb ramps and stairs, never climb ladders or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl; occasionally reach overhead with both upper extremities; and must avoid concentrated exposure to extreme temperatures, wetness, humidity, loud noise, vibration, fumes, odors, dusts, gases, and hazards.

21  (R. at 21–22.) Accordingly, the ALJ found that Plaintiff can perform past relevant work as a teacher aide and a housekeeping cleaner. (R. at 26.)

23  **II.  LEGAL STANDARD**

24  In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence

that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. ANAYSIS

Plaintiff raises two issues before the Court. First, Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 12–18.) Second, Plaintiff argues the ALJ erred in assigning little weight to the opinion of treating physician, Dr. John M. Belden. (Pl. Br. at 18–23.)

The Court finds that the ALJ provided specific, clear, and convincing reasons supported by substantial evidence in rejecting Plaintiff's symptom testimony. Specifically, the ALJ found the medical evidence and Plaintiff's activities of daily living ("ADLs") conflicted with Plaintiff's symptom testimony. Second, the ALJ provided specific and legitimate reasons for assigning little weight to Dr. Belden's medical opinion because the medical opinion conflicted with the other medical evidence in the record, and it conflicted with Plaintiff's ADLs. For the following reasons, the Court affirms.

**A. The ALJ did not err in rejecting Plaintiff's symptom testimony.**

Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 12–18.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Here, the ALJ found "[Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the alleged intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained throughout this decision." (R. at 24.)

First, the ALJ found that Plaintiff attempted to minimize her ADLs. (R. at 24.) Second, the ALJ found that Plaintiff generally did not receive the type of medical treatment expected of a disabled individual. (R. at 23.) The Court affirms for the following reasons.

In describing Plaintiff's ADLs, the ALJ explained that Plaintiff reported: "attending to her own personal care and hygiene, cooking, cleaning the kitchen, doing dishes, doing laundry, vacuuming, cleaning the bathrooms, changing bedsheets, driving, running errands, shopping in stores, paying bills, managing her money, going to the library, watching television, reading, visiting family, driving to medical appointments, driving her son to and from school, driving her boyfriend to and from work, taking care of her young son, taking care of her grandson at times, and going to sporting events."(R. at 24, 52–55, 190–98.) The ALJ then found that Plaintiff complained of pain, but she had normal strength in all muscle groups, normal reflexes and sensation in all extremities, and normal gait. (R. at 24, 463, 542–43, 553, 753, 757, 805–06, 834, 947, 996, 1215–16.) The ALJ also found that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition." (R. at 24.) The ALJ indicated that Plaintiff's ability to drive her son to and from school, drive her boyfriend to work, drive to doctors' appointments, and drive her grandson to outings was inconsistent with Plaintiff's testimony that she had a limited ability to sit and had loss of strength in her hands and arms. (R. at 24.) The Court agrees. Here, the ALJ has provided specific, clear, and convincing evidence to show that Plaintiff's ADLs conflict with her symptom testimony. Plaintiff was able to engage in various activities, including driving frequently, and caring for her children and grandchild.

Plaintiff also argues the ALJ did not connect the general discussion of Plaintiff's symptom testimony with the medical evidence. (Pl. Br. at 14.) However, the ALJ does provide evidence from the medical record in rejecting Plaintiff's symptom testimony. In describing how Plaintiff's medical records and medical treatment conflicted with her symptom testimony, the ALJ described Plaintiff's past medical treatment and cited to all

the past types of treatment she underwent. (R. at 23, 324–75, 806.) The ALJ noted that the records show Plaintiff was treated for cervical, lumbar spine, and bilateral shoulder condition, but that these treatments have been routine and conservative and limited to pain medication, cervical epidural steroid injections, lumbar medical branch blocks, and lumbar radiofrequency ablation. (R. at 23, 324–75, 806.) The ALJ found it was significant that Plaintiff did not require surgical intervention and that Plaintiff's pain management doctor advised her to increase her activity level. (R. at 23, 842.) The Court finds the ALJ did discuss the medical record in detail in discussing Plaintiff's symptom testimony.

Additionally, Plaintiff argues that the ALJ erred in finding that Plaintiff did not receive medical treatment that would indicate Plaintiff was disabled and that the ALJ erred by not describing what Plaintiff could have done to show the validity of her reported pain symptoms. (Pl. Br. at 15.) Plaintiff argues that her treatment was not "routine" or "conservative", as the ALJ described. (R. at 23; Pl. Br. at 15.) Regardless, the record shows that Plaintiff had normal gait, normal sensation, negative straight leg raise, normal strength in muscles, intact coordination, and symmetric deep tendon reflexes, (R. at 463–64, 469–70, 475–76, 488–89, 665, 685, 767, 775, 794, 805–06, 812–13, 819–20, 826–27, 833–34, 840–41, 947, 951, 954, 958, 993, 996.) Even if Plaintiff's treatment would not be considered routine or conservative, the error is harmless because the ALJ has shown that the medical evidence and Plaintiff's ADLs conflict with her symptom testimony. *Tommasetti*, 533 F.3d at 1038 ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.") (internal quotations marks omitted).

The Court finds the ALJ did describe evidence in the medical record to support his findings, and in doing so, showed there was specific, clear, and convincing reasons, supported by substantial evidence for the ALJ's findings that Plaintiff's symptom testimony was inconsistent with the medical evidence and with Plaintiff's ADLs.

**B.     The ALJ did not err in assigning little weight to Dr. Belden's medical opinion.**

Plaintiff argues the ALJ erred in assigning little weight to the opinions of Dr. Belden. (Pl. Br. at 18–23.) While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ gave little weight to the opinion of Dr. Belden. (R. at 25, 724, 896–97, 1466–67.) On September 11, 2017, Dr. Belden submitted a letter indicating Plaintiff is unable to perform work of any kind due to her medical conditions. (R. at 25, 724.) Dr. Belden opined Plaintiff could not walk for more than a few minutes, could not sit for any length of time, and had mental health disorders limiting her ability to complete and perform tasks. (R. at 25.) Dr. Belden submitted medical assessments from June 21, 2017 and June

9, 2019 indicating Plaintiff could not work because she had uncontrolled seizures, cervical stenosis, lumbar spondylosis, and chronic hepatitis C. (R. at 25, 896–97, 1466–67.) He also found Plaintiff was limited in carrying and lifting less than 10 pounds, sitting less than two hours, standing and/or walking less than two hours, alternating between sitting, standing, and walking every 1-20 minutes, occasional use of hands, less than occasional bending, reaching, and stooping, she would be off task greater than 21% of the time in an eight-hour workday, and six or more absences per month. (R. at 25, 896–97, 1466–67.)

The ALJ gave these opinions little weight for several reasons. (R. at 25.) First, the ALJ found that opinions concern an issue reserved to the Commissioner and that the statements that Plaintiff was unable to work are not entitled controlling weight and are not given special significance. (R. at 25.) Second, the ALJ found these extreme opinions were inconsistent with the objective medical evidence. (R. at 25.) Last, the ALJ found Dr. Belden's opinions were inconsistent with Plaintiff's ADLs. (R. at 25.)

Plaintiff argues the ALJ erred in finding Dr. Belden's opinions were inconsistent with the medical evidence because there was evidence to show Dr. Belden's assessed limitations were supported. (Pl. Br. at 19–20.) The Court agrees with the ALJ and finds there was specific and legitimate evidence in the record to support the ALJ's finding. The ALJ explained that Dr. Belden's opined-to limitations of lifting and carrying less than 10 pounds, sitting less than two hours, and standing and/or walking less than two hours are inconsistent with Plaintiff's physical examinations showing normal gait, normal strength, normal sensation, and normal reflexes. (R. at 25, 463–64, 469–70, 488–89, 665, 685, 767, 775, 805–06, 812–13, 819–20, 826–27, 833–34, 840–41, 947, 951, 954, 958, 993, 996.) Additionally, in March 2016, a cervical MRI showed mild to moderate abnormalities and only mild spinal narrowing. (R. at 368–69.) MRIs taken later showed no significant canal stenosis, no cord compression, and no abnormal cord signal. (R. at 1052–53, 1391–92.) Lumbar x-rays and MRIs showed no spinal stenosis or neural foraminal narrowing. (R. at 536–37, 854.) In December 2016, an x-ray showed Plaintiff's right clavicle had mild acromioclavicular joint degeneration. (R. at 606.) In July 2016, electrodiagnostic studies

showed no evidence of cervical radiculopathy, brachial plexopathy, or peripheral neuropathy in Plaintiff's upper extremities. (R. at 359.) Additional electrodiagnostic studies showed no evidence of lumbar radiculopathy, lumbosacral plexopathy, or peripheral neuropathy in Plaintiff's lower extremities. (R. at 481, 973.) The ALJ provided specific and legitimate reasons for giving little weight to Dr. Belden's opinion by describing how it was contradicted by the other medical evidence in the record.

Plaintiff also argues the ALJ erred in finding Dr. Belden's opinions were inconsistent with Plaintiff's ADLs. (Pl. Br. at 20–21.) The ALJ explained that Dr. Belden indicated Plaintiff was not able to sit for any length of time, but, as previously described by the ALJ, that was inconsistent with Plaintiff's testimony that she does a significant amount of driving—she drives her son to and from school, she drives her boyfriend to and from work, she drives to medical appointments, she drives to visit her daughter, she drives her grandson to outings, and she drives to run errands. (R. at 25.) Additionally, the ALJ found Plaintiff's ability to perform such a wide range of tasks was inconsistent with the severe limitations assessed by Dr. Belden. (R. at 25.) Plaintiff argues that ALJ's finding mischaracterizes the evidence and explains that her son's school was only a mile and a half from their home and that she only drove her boyfriend to work for a few weeks when his truck was broken. (R. at 25, 52; Pl. Br. at 20–21.) Plaintiff also argues the ALJ mischaracterizes her ability to care for her five-year-old grandson. (Pl. Br. at 21.) Plaintiff explains that she would take her grandson to the movies or to the library "once in a while." (R. at 25, 54; Pl. Br. at 21.) But Plaintiff also indicated that she provided childcare to her grandson when her son was working and that she spent a lot of time with her children and grandchild. (R. at 628, 1517.) As previously described, the ALJ found that Plaintiff engages in various ADLs that not only conflict with her symptom testimony, but also with Dr. Belden's opinions that Plaintiff would not be able to work. The ALJ provided specific and legitimate reasons supported by substantial evidence in describing how Plaintiff's ADLs conflicted with Dr. Belden's opinion. The Court agrees with the ALJ's finding.

Last, Plaintiff argues that the ALJ erred in assigning great weight to the opinions of the state agency consultants, Dr. Charles Combs, Dr. Robert Mitgang, and Dr. Jose Gonzalez-Mendez. (Pl. Br. at 22–23; R. at 24.) The ALJ explained that these doctors opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday, occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally reach overhead with the bilateral upper extremities; and avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, loud noise, vibration, fumes, odors, dusts, gases, and hazards. (R. at 24, 76–79, 91–92, 721.) The ALJ found that the state agency consultants based their opinions on the medical records and that the opinions were supported by evidence in the record including that Plaintiff had normal gait, unrestricted movement of the arms and legs, normal strength, normal sensation, and normal reflexes. (R. at 24–25, 463–64, 469–70, 475–76, 488–89, 665, 685, 767, 775, 794, 805–06, 812–13, 819–20, 826–27, 833–34, 840–41, 947, 951, 954, 958, 993, 996.) The ALJ provided specific and legitimate reasons for giving great weight to the state agency consultant's opinions by describing how their opinions aligned with the medical evidence in the record.

## IV.   CONCLUSION

Substantial evidence supports the ALJ's nondisability determination. The ALJ provided specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony and provided specific and legitimate reasons supported by substantial evidence in considering the medical opinion of Dr. Belden.

**IT IS THEREFORE ORDERED** affirming the April 2, 2019 decision of the Administrative Law Judge (R. at 13–27), as upheld by the Appeals Council on March 26, 2020 (R. at 1–3).

///

///

///

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 14th day of May, 2021.

                                                       Honorable Steven P. Logan
                                                       United States District Judge